WARD, Judge,
dissenting with reasons.
I dissent.
This is an appeal from a judgment of the Civil District Court which reversed a ruling of the Louisiana Racing Commission. The District Court held that the Racing Commission erred when it disqualified the winning horse in a race conducted at the New Orleans Fairgrounds.
The controversial race was the Esplanade Handicap, the ninth race on December 5, 1981. The winning horse was Conge, owned by Mr. Albert Stall. The second and third place horses were Porte Eads and Shamsie, owned respectively by interve-nors, Driftwood Stables and Mrs. Pasqueli-na Fox.
More than a month after the race, it became public knowledge that when Conge raced in the Esplanade Handicap, he had not passed his pre-race blood test because of an excessive level of phenylbutazone, although his post-race urine test was clean and free of excessive drugs. That he was allowed to race when he should have been scratched was the result of a clerical error in the pre-race testing procedures, and the record is clear — there is no allegation of deceit or subterfuge by either the owner, trainer, or anyone connected with Conge.
Although there had been rumors around the track that Conge had flunked his pre-race test, the information was not public until January 28, 1982, when a newspaper article reported the story, and the protests and complaints by Driftwood and Mrs. Fox followed.
Their complaints were made first to the Stewards of the New Orleans Fairgrounds and then to the Commission. In a decision that was dated March 12, 1982, and issued March 14, 1982, the Stewards rejected the protests and gave reasons, relying on LAC 11-6:53.43H of the Rules of Racing:
The pre-race testing program so conducted at a designated track shall in no way change or interfere with the post-race testing program of the Commission. In the event of a conflict between pre-race and post-race tests, the post-race test governs and prevails.
The Commission, however, agreed to hear an appeal of the Stewards’ decision, and at its hearing on May 6, 1982, the Commission reversed the Stewards ruling, disqualified Conge, and ordered the purse redistributed. On June 25, 1982, the Commission denied Mr. Stall’s request for a rehearing, and on July 19, 1982, he filed suit for judicial review of the Commission’s decision. On November 24, 1982, the Trial Judge rendered judgment reversing the Commission, relying on LAC 11-6:53.43H of the Rules of Racing.
The statutory authority for a District Court’s review of a decision by an agency or commission is set out in La.R.S. 49:964 G which states:
The Court may affirm the decision of the agency or remand the case for further proceedings. The court may reverse or modify the decision if substantial rights of the appellant have been prejudiced because the administrative findings, inferences, conclusions, or decisions are:
(1) In violation of constitutional or statutory provisions;
(2) In excess of the statutory authority of the agency;
(3) Made upon unlawful procedure;
(4) Affected by other error of law;
(5) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion; or
(6) Manifestly erroneous in view of the reliable, probative, and substantial evidence on the whole record.
[[Image here]]
I believe that the Trial Judge was correct and that the decision of the Commission was contrary to its own rules; hence it was arbitrary and capricious, and manifestly erroneous in view of the whole record. Addi *793 tionally, I believe the decision exceeded its statutory authority.
The Rules of Racing adopted by the Commission LAC 11-6:53.43H is clear, unequivocal, and applicable:
The pre-race testing program so conducted at a designated track shall in no way change or interfere with the post-race testing program of the Commission. In the event of a conflict between pre-race and post-race tests, the post-race test governs and prevails.
The majority concludes that the rule is inapplicable because it was never intended to apply to a unique situation, such as this, and the majority relies upon an opinion of one of nine Commissioners, Mr. Allen, who, when he explained the reason for his vote, concluded by saying the rule is not applicable. On the other hand, Mr. Louis Rous-sell, Jr., attorney for the Fair Grounds, testified under oath that the rule was applicable. Neither opinion is evidence, but one is certainly as persuasive as the other. Other than Mr. Allen’s opinion, there is nothing, not one bit of evidence to show that this situation, however unique, was not intended to be covered by the above rule. Yet, the majority confidently states it was not.
On the other hand, there is good reason to believe that it was. Pre-race testing is not required by law nor by Commission rules, but post-race testing is. As a matter of fact, of the four tracks in Louisiana, only the Fair Grounds has adopted pre-race testing. Hence, it is logical to assume, as the Commission’s rule provides, that in the event of conflict, the test required by the Commission, the post-race test, would prevail.
There are other reasons to believe the post-race test was meant to prevail. The Rules of Racing govern the kinds and amounts of medications that are permitted or prohibited in competing horses, and testing procedures have been established to insure that each horse is free of illegal drugs. The pre-race test uses a blood sample analyzed at the track, while the post-race test uses a urine sample carefully analyzed at the State Chemist’s laboratory, not under the pressure of time as the pre-race test.
The record indicates that the pre-race testing of horses is a newer procedure for determining the presence of medication in horses than the post-race urine test. The pre-race program must be requested by the race track and receive approval by the Commission before it is implemented; it is a discretionary screening procedure. The record reflects that the pre-race laboratory at the Fairgrounds is newly developed and is still exchanging information with other laboratories around the country for the purpose of reaching the most effective procedures and results. What appears from the record is that an indeterminate margin of error exists whereby a horse may not be drug-free in the pre-race blood test but then be drug-free in the post-race urine test. Hence, I believe this is an adequate explanation for adoption by the Commission of LAC 11-6:53.43(H), providing that the post-race test shall govern.
In sum, because the pre-race test is discretionary for each race track, while the post-race test is mandated by the Commission, and because the pre-race test is innovative and a relatively new procedure, I do not believe as the majority believes that this provision is applicable only when the pre-race test is negative and the post-race test is positive. Rather, I believe it is also applicable to the current fact situation where the pre-race test is positive.
But more importantly, when a rule is so clear and unambiguous, we should not go beyond its words to speculate about the intent of the Commissioners when they adopted it. The language of LAC 11-6:53.-43(H) is clear and unambiguous. Although a horse would usually be disqualified when the pre-race test is positive, when an error occurs which permits that horse to run, I cannot say that LAC 11-6:53:43(H) is not applicable.
Moreover, unlike the majority, I do not believe the Commission had authority to reverse the Steward’s ruling.
*794 Although the majority finds support for the Commission’s action in R.S. 4:172 B, I do not. By its own terms, the statute applies only in cases not covered by the Rules of Racing.
R.S. 4:172
A, * * ⅝
B. Should any case occur which may not be covered herein or by the Rules of Racing, it shall be determined by the commission and implemented by the stewards but only insofar as such determination is consistent with justice, the best interest of racing and with powers and authority herein granted; and when no penalty is provided, the stewards of the meeting are hereby given authority to exercise their full power, recommending to the commission the imposition of more severe penalties if, in their judgment, the penalty should be more drastic. (Emphasis added)
[[Image here]]
But, the Rules of Racing cover the case: LAC 11-6:28.1 ⅜ * *.

The stewards, however, may scratch an ineligible horse or reassign any prize a horse may have won, at any time.

Obviously, if Track Stewards are authorized to scratch an ineligible horse or to reassign any prize a horse may have won, at any time, LAC 11-6:28.1, this covers the case, and R.S. 4:172 cannot apply.
The majority, relying on R.S. 4:172, although I am not sure, apparently believes any aggrieved party can directly petition the Commission to redress any alleged grievances at any time if they cannot obtain relief from the Stewards. I am not willing to concede that the Legislature granted the Commission this authority. The Rules of Racing have given the Stewards, not the Commission, the authority to redistribute a purse.
Finally, the Legislature has narrowly defined the limits of the Commission’s authority to review the Steward’s ruling to those cáses where the Stewards have fined or disciplined any person.
R.S. 4:156
A final appeal, in the case of any person penalized, or disciplined by the Stewards, may be taken to the Commission.
In the instant case, the Stewards have declined to scratch Conge or to reassign the purse he won. No one has been fined or disciplined, no one has demonstrated the Steward’s decision was wrong,- and no one has shown to my satisfaction that the Commission had jurisdiction.
I would affirm, and therefore I respectfully dissent.